UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NATIONAL FOAM, INC., | Case No. 23-cv-03873-LB |
| Plaintiff, | **ORDER RESOLVING NATIONAL FOAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| ZURICH AMERICAN INSURANCE COMPANY, | Re: ECF No. 165 |
| Defendant. | |

**INTRODUCTION**

This insurance-coverage dispute arises from thousands of lawsuits against plaintiff National Foam for alleged injury caused by per- and polyfluoroalkyl substances (PFAS) in its Aqueous Film-Forming Foam (AFFF) fire-extinguishing products. The lawsuits mostly are consolidated in multidistrict litigation (MDL) in the District of South Carolina. National Foam moves for partial summary judgment against Commerce & Industry Insurance Company (C&I) on three issues: (1) whether C&I must pay National Foam's defense counsel's full hourly rates (and not reduce them to C&I's panel-counsel rates); (2) whether C&I must provide a complete defense, which would allow C&I to pursue the other two insurance carriers for contribution (but not apportion defense costs among the three carriers); and (3) whether C&I has a duty to defend *Bertsch v. 3M Co.*, which involves direct AFFF exposure from 1973–1988, which predates National Foam's existence.

This is the third motion on these or related issues, which turn in part on whether California or

ORDER – No. 23-cv-03873-LB

North Carolina law applies. The court previously held that the three carriers had a duty to defend one exemplar direct-exposure case (*Allen*) and no duty to defend two exemplar water-contamination cases (*Newburg* and *Bates*).[1] Another order denied the previous iteration of this motion without prejudice, directing a fuller choice-of-law briefing and noting that apportionment turned on choice-of-law issues that were not ripe.[2]

On this briefing, the court cannot determine whether North Carolina law applies. C&I may file a standalone motion on the choice of law. Under California and North Carolina law, it has no duty defend the *Bertsch* suit, which involves exposure decades before National Foam's existence and outside the policy period. C&I has forfeited its right to control rates, and in any event, panel rates for Greenberg Traurig are close to the rates sought. The record otherwise does not permit an assessment of the reasonableness of the bills. The allocation issue is not ripe.

### STATEMENT

National Foam manufactures AFFF products containing PFAS, which are used to extinguish fires. Thousands of lawsuits have been filed against National Foam, many consolidated in multidistrict litigation in the District of South Carolina, alleging bodily injury from PFAS exposure. The claims fall into two categories: indirect exposure (e.g., through contaminated water) and direct exposure (e.g., firefighters handling AFFF).[3] C&I's policies require it to pay for "sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage" that "occurs during the policy period" and is "caused by an occurrence . . . in the coverage territory."[4] "'Bodily injury' means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."[5] C&I must defend National Foam in "any

---

[1] Order – ECF No. 124. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated numbers at the top of pages.

[2] Order – ECF No. 159.

[3] Order – ECF No. 124 at 1, 6–11.

[4] *See* 2016–2017 C&I Policy, Ex. A to Guest Decl. – ECF No. 165-3 at 15 (§§ IA1a & IA1b(1)–(2)) (cleaned up).

[5] *Id.* at 27 (§ V3).

United States District Court
Northern District of California

'suit' seeking those damages."[6] It must defend National Foam's indemnitees if certain conditions are met, such as the insured's assumption of liability from the indemnitee via an "insured contract."[7]

In an earlier order, applying California law, the court granted partial summary judgment to National Foam on the duty to defend the *Allen* lawsuit, which involved firefighters' injuries from direct exposure to AFFF. The court found a duty to defend because the exposure could constitute an occurrence within the policy period, and the pollution exclusion did not apply because the plaintiffs' theory involved direct exposure from product use rather than environmental dispersal.[8] The court granted summary judgment to the carriers in exemplar cases *Newburgh* and *Bates* because the pollution exclusion barred coverage where injuries stemmed from pollutants released into water or the environment.[9]

The court denied National Foam's summary-judgment motion on 182 direct-exposure cases, holding that it had not met its burden to show that all such cases involved injuries on or after June 28, 2013. (National Foam did not exist before it began operations on June 28, 2013, following predecessor Kidde-Fenwal, Inc.'s sale of its firefighting business, including the National Foam products.[10]) Some cases involved pre-2013 exposure, possibly precluding C&I's liability under the MDL court's March 27, 2023, order in *City of Stuart v. 3M Co.*:[11]

> National Foam argues that it cannot be held liable for any damages related to City of Stuart's claims based on AFFF sales before June 28, 2013, because National Foam did not begin operations until that date. (*See* Dkt. No. 2690-1 at 1–2). The record shows, and City of Stuart does not dispute, that National Foam began operations on June 28, 2013, when it acquired Kidde's firefighting foam division. (Dkt. No. 2690-3 at 4; Dkt. No. 2804 at 1). Based on this record, the City of Stuart does not oppose

---

[6] *Id.* at 15 (§ I1a), 30 (§ V18 (defining "suit")).

[7] *Id.* at 22–23 (§§ 1A & B2).

[8] Order – ECF No. 124 at 7–10.

[9] *Id.* at 11–14.

[10] Compl., *In re KFI Wind-Down Corp.*, No. 23-10638 (LSS), Ex. C to Req. for Jud. Notice – ECF No. 165-6 at 77–78 (¶¶ 11–15). The requests for judicial notice are unopposed.

[11] Order – ECF No. 124 at 5–6, 6 n.8.

United States District Court
Northern District of California

National Foam's request with respect to the pre-June 2013 liabilities. Accordingly, the Court grants National Foam's motion for partial summary judgment.[12]

The present motion involves the *Bertsch* lawsuit, filed in the South Carolina MDL and tendered (with the other lawsuits) to C&I on October 5, 2022. It claims damages from alleged direct exposure to AFFF products before 2013.[13]

National Foam claims $2,516,664.50 in post-tender fees. C&I reimbursed only $168,000, determining that only 2,218 of the approximately 11,000 AFFF lawsuits (roughly twenty percent) were post-2013 direct exposure cases and its one-third share (for the three carriers) was $168,000.[14] XL Insurance America made a $100,800 payment to National Foam, a one-fifth payment of defense fees, and Zurich paid $100,000, calculating the percent it owed on the total.[15] The carriers made a collective payment of $750,000 for defense costs for direct-exposure cases "that do not explicitly allege solely pre-2013 exposure."[16]

The carriers offered National Foam two options for defense costs going forward: (1) appointment of Gordon Rees as independent *Cumis* counsel or (2) paying Greenberg Traurig as *Cumis* counsel, but at Gordon Rees's lower hourly rates.[17]

The parties consented to magistrate-judge jurisdiction.[18] 28 U.S.C. § 636(c)(1). The court held a hearing on March 19, 2026.

---

[12] Order, *City of Stuart v. 3M Co.*, No. 2:18-cv-03487-RMG (D.S.C. Mar. 27, 2023), Ex. D to Req. for Jud. Notice – ECF No. 165-6 at 478–80.

[13] Compl., *Bertsch v. 3M Co.*, No. 21-cv-1643-RMG, Ex. A to Req. for Jud. Notice – ECF No. 165-6 at 32–33 (¶¶ 116–24); Order – ECF No. 159 at 4–5 (direct exposure between 1973 and 1988, decades before 2013).

[14] Letter, Ex. F to Opgenorth Decl. – ECF No. 165-1 at 124–26.

[15] Emails, Ex. G to Opgenorth Decl. – ECF No. 165-1 at 130–34; Letter, Ex. H to Opgenorth Decl. – ECF No. 165-1 at 139–40; Mot. – ECF No. 165 at 11 (explaining context).

[16] Opp'n – ECF No. 171 at 15 (explaining calculations); Letter, Ex. H to Opgenorth Decl. – ECF No. 165-1 at 140–41.

[17] Letter, Ex. 2 to Sher Decl. – ECF No. 171-3 at 4.

[18] Consents – ECF Nos. 7, 11, 61, 63–64.

United States District Court
Northern District of California

<strong>GOVERNING LAW</strong>

**1. Summary Judgment**

Summary judgment must be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, the nonmoving party must produce evidence of a genuine issue of material fact. *Id.* at 322–23.

**2. Choice of Law**

A federal court in diversity actions applies the forum state's choice-of-law rules. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). California applies the governmental-interest test, first determining whether the foreign law differs materially from California law (meaning, application of the laws leads to different results) and, if so, applies the law of the state whose interests would be more impaired if its law were not applied. *Id.* (citing *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 918–21 (2001)). A choice-of-law analysis is made on an issue-by-issue basis. *S. A. Empresa De Viacao Aerea Rio Grandense v. Boeing Co.*, 641 F.2d 746, 749 (9th Cir. 1981). The party invoking a foreign forum's law has the burden of proof. *Zinser*, 253 F.3d at 1187.

**3. Duty to Defend — California**

Under California law, "[i]nterpretation of an insurance policy is a question of law and follows the general rules of contract interpretation."[19] *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). An insurer's duty to defend is broader than its duty to indemnify. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993). Even the potential of indemnity triggers the duty to

---

[19] Previously, the court applied California law. The carriers contended that they prevailed under insurance law in California, where this action was filed, or in North Carolina, where the policies issued. They reserved their right to raise choice-of-law issues later. Order – ECF No. 124 at 4 n.7.

defend. *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654–55 (2005). The duty to defend is assessed at the outset of a case. *Montrose*, 6 Cal. 4th at 295.

The inquiry begins by comparing "the allegations of the complaint and the terms of the policy." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 287 (2014). The continuous-injury trigger of coverage can apply to claims of continuous or progressively deteriorating damage or injury, potentially for all policies in effect during those periods. *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 689 (1995). Extrinsic evidence can be considered in determining whether there is a duty to defend. *Montrose*, 6 Cal. 4th at 298–99. Coverage is construed broadly in favor of the insured. *MacKinnon*, 31 Cal. 4th at 647–48. Exceptions are interpreted narrowly against the insurer. *Id.* at 648. The insured has the burden to establish that the claim is within the basic scope of coverage, and the insurer has the burden to establish that exceptions apply. *Id.*

### 4.  Duty to Defend — North Carolina

An insurer's duty to defend ordinarily is measured by the facts in the pleadings, and its duty to pay is measured by the facts determined at trial. *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691 (1986). Injury occurs when the claimant is exposed to the harmful substance, not when the disease manifests. *Imperial Cas. & Indem. Co. v. Radiator Specialty Co.*, 862 F. Supp. 1437, 1442–43 (E.D.N.C. 1994); *Radiator Speciality Co. v. Arrowood Indem. Co.*, 383 N.C. 387, 404–06 (2022).

### 5.  *Cumis* Counsel — California

When an insurer's appointed counsel has a disqualifying conflict, the insured may hire independent counsel at the insurer's expense. Cal. Civ. Code § 2860(a); *S.D. Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal. App. 3d 358, 364 (1984). The insurer must pay reasonable and necessary defense costs but may limit payment to the rates it pays counsel in similar actions. Cal. Civ. Code § 2860(c).

ORDER – No. 23-cv-03873-LB                                              6

If an insurer breaches its duty to defend, it forfeits the right to control defense counsel's rates. *Travelers Prop. Cas. Co. of Am. v. Liberty Mut. Fire Ins. Co.*, No. 22-cv-05803-VC, 2023 WL 3510384, at *2 (N.D. Cal. May 16, 2023) (citing *J.R. Mktg., L.L.C. v. Hartford Cas. Ins. Co.*, 158 Cal. Rptr. 3d 41, 49 (Cal. App. 2013)). The bills still must be "objectively reasonable." *Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal. 4th 988, 1006–07 (2015). The insurer has the burden to prove that fees are unreasonable and unnecessary. *Id.* at 1007.

**6.  Apportionment — California and North Carolina**

Under California law, even with overlapping coverage, each insurer is liable for the entire cost of defending a claim. *In re Plant Insulation Co.*, 734 F.3d 900, 907 n.3 (9th Cir. 2013) (citing *Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998)). Insurers who pay a full defense may later seek contribution from other responsible insurers. *Id.* (citing *Fireman's Fund*, 65 Cal. App. 4th at 1293, 1297).

North Carolina law allocates costs differently, holding each insurer responsible for its pro rata share. *Radiator Speciality Co.*, 383 N.C. at 413.

## ANALYSIS

**1.  Duty to Defend *Bertsch***

**1.1 Choice-of-Law Analysis**

The threshold issue is choice of law. C&I points to the lack of California contacts (other than this litigation): National Foam's principal place of business is North Carolina, and C&I's policies were issued there. C&I asserts that this weighs in favor of applying North Carolina law, and North Carolina has an interest in the application of its exposure theory.[20] National Foam counters that nationwide policies may be construed under the law of the jurisdiction where the claim arises. The

---

[20] Opp'n – ECF No. 171 at 25.

United States District Court
Northern District of California

*Bertsch* claim arose in California: the plaintiff resided in California and was exposed to AFFF here. C&I identifies no claim or lawsuit arising in North Carolina.[21]

Under California law, a contract is interpreted "according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. "A contract 'indicates a place of performance' within the meaning of section 1646 if the contract expressly specifies a place of performance or if the intended place of performance can be gleaned from the nature of the contract and its surrounding circumstances." *The Pep Boys Manny Moe & Jack of Cal. v. Old Republic Ins. Co.*, 98 Cal. App. 5th 329, 347 (2023) (cleaned up) (citing Cal. Civ. Code § 1646; *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1443 (2007)). The place of performance for an insurance policy is the place of the insured risk. *Frontier*, 153 Cal. App. 4th at 1450.

In *Pep Boys*, the court held that under § 1646, the policy must be interpreted according to the law of the different states where Pep Boys had stores selling asbestos-containing products covered by the policy. 98 Cal. App. 5th at 347. Insurance law accepts "that a single policy can be interpreted and applied differently in different states. A liability insurance policy issued on a nationwide basis may be construed in accordance with the law of the jurisdiction in which a particular claim arises." *Id.* at 348 (cleaned up). That approach might prove unworkable in practice because Pep Boys operated stores nationwide, but because the insurance company did not analyze the competing interests of any other states, it did not meet its burden. *Id.* at 348–49. The court thus applied the "default choice of law principle that a California court will apply California law." *Id.*

Applying *Pep Boys* to the *Bertsch* action, the claim arose in California, and the insured risk arguably is here. C&I identified North Carolina's interest in the application of the exposure theory (discussed in the next section) to policies issued in North Carolina to an insured headquartered in North Carolina.[22] That argument has resonance. But its choice-of-law argument was raised in opposition to National Foam's coverage motion, which meant that it had no opportunity to respond

---

[21] Reply – ECF No. 173 at 7; Compl., *Bertsch*, No. 21-cv-1643-RMG, Ex. A to Req. for Jud. Notice – ECF No. 165-6 at 9 (¶¶ 9–10).

[22] Opp'n – ECF No. 171 at 25.

United States District Court
Northern District of California

— except at oral argument — to National Foam's reply. The court thus has insufficient briefing to fully evaluate the choice of law. Given the differences between California and North Carolina laws, C&I may file a standalone motion on the choice of law.

**1.2 Duty to Defend — California**

The issue is whether under California law, C&I has a duty to defend National Foam in *Bertsch*. C&I contends that there is no possibility of coverage because the *Bertsch* claimant, who was exposed to AFFF as a firefighter from 1973 to 1988, was not exposed to National Foam products. (National Foam was formed in 2013.) It also contends that under North Carolina law, there is coverage only for exposure during the policy period.[23] There is no duty to defend *Bertsch*.

An insurer does not owe a duty to defend if the complaint does not "raise a single issue which could bring it within the policy coverage." *La Jolla Beach & Tennis Club, Inc. v. Indus. Indem. Co.*, 9 Cal. 4th 27, 39 (1994), *as modified* (Mar. 2, 1995); *Buss v. Super. Ct.*, 16 Cal. 4th 35, 47–48 (1997); *Lassen Canyon Nursery, Inc. v. Royal Ins. Co. of Am.*, 720 F.2d 1016, 1018 (9th Cir. 1983) (citing *Giddings v. Indus. Indem. Co.*, 112 Cal. App. 3d 213, 219–20 (1980)) (no duty to defend because the complaint did not allege damages that would trigger coverage).

The complaint does not allege direct exposure to National Foam's products. The exposure to AFFF was from 1973 to 1988, years before 2013, when National Foam came into existence. *Montrose*, 6 Cal. 4th at 298–99 (extrinsic evidence can be considered in determining whether an insurer has a duty to defend). If North Carolina law applies, then a separate ground precludes coverage: bodily injury occurs in the policy period when the claimant is exposed to the harmful substance, not when the bodily injury manifests. *Imperial*, 862 F. Supp. at 1441–42.

Another issue is whether the insured-contract policy provision provides an independent basis for coverage. In predecessor Kidde-Fenwal's indemnity action, it alleged that National Foam assumed liability for pre-2013 products.[24] The C&I policies cover "suits" against the insured's

---

[23] *Id.* at 20, 24–25.

[24] Compl., *In re KFI Wind-Down Corp.*, No. 12-10368 (LSS), Ex. C to Req. for Jud. Notice – ECF No. 165-6 at 74–75 (pp. 1–2) (¶¶ 1–3).

United States District Court
Northern District of California

indemnitee for "insured contracts."[25] An "insured contract" is "[t]hat part of any other contract . . . pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage.'"[26] National Foam asserts this as a basis for coverage.[27] *LaBarbera v. Sec. Nat'l Ins. Co.*, 86 Cal. App. 5th 1329, 1334 (2022) (affirming carrier's obligation to defend the insured contractor for liability he assumed in a contract). But the "test is whether the *underlying action for which defense and indemnity is sought* potentially seeks relief within the coverage of the policy." *La Jolla Beach & Tennis Club*, 9 Cal. 4th at 44. *Bertsch* — a lawsuit to hold National Foam liable for Kidde-Fenwal-era AFFF exposure — does not provide the potential for coverage and thus does not give rise to a duty to defend.

In sum, C&I has no duty to defend *Bertsch*.

A final issue is whether National Foam is judicially estopped from asserting C&I's duty to defend because it asserted in *City of Stuart* that it was not liable for damages for pre-2013 AFFF products.[28] Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001); *see MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co.*, 36 Cal. 4th 412, 422 (2005) (party takes two "totally inconsistent" positions, with the first adopted by the court).

Judicial estoppel does not apply. First, the duty to defend is assessed at the time of tender. *Montrose*, 6 Cal. 4th at 295; *CNA Cas. of Cal. v. Seaboard Sur. Co.*, 176 Cal. App. 3d 598, 610 (1986). The *City of Stuart* order issued in March 2023, five months after the October 2022 tender. Second, National Foam's *Stuart* position — that it cannot be liable for pre-2013 AFFF sales because it did not exist until 2013 — is not clearly inconsistent with its present argument that the Kidde-Fenwal acquisition agreement included its assumption of Kidde-Fenwal's pre-acquisition tort liabilities. Third, the duty to defend does not require that liability be probable, only possible.

---

[25] *See supra* Statement.

[26] *See* 2016–2017 C&I Policy, Ex. A to Guest Decl. – ECF No. 165-3 at 27–28 (§ 9f).

[27] Mot. – ECF No. 165 at 19–20.

[28] Opp'n – ECF No. 171 at 21–24.

## 2. *Cumis* Counsel

Under California law, an insurer that "fails to meet its duty to defend and accept tender" forfeits the protections of Cal. Civ. Code § 2860(c). *J.R. Marketing*, 158 Cal. Rptr. 3d at 49; *Travelers*, 2023 WL 3510384, at *2. That is the case here: C&I never accepted tender with a reservation of rights. National Foam hired Greenberg Traurig as a result. C&I cannot reduce the rates to *Cumis* rates. Under *Travelers*, C&I has forfeited its right to control rates. 2023 WL 3510384, at *2.

The fees still must be objectively reasonable, and C&I must prove that they are unreasonable and unnecessary.[29] *Hartford*, 61 Cal. 4th at 1006–07. That rule might implicate hourly rates. But C&I did not cite any cases holding that. Moreover, the rates issue seems moot because there is a floor for rates: C&I does not dispute that it should apply its own panel rates for Greenberg Traurig.[30] At the hearing, National Foam said that panel rates were close to the rates sought here. At minimum, the panel rates are reasonable and necessary. There is no record to otherwise assess the reasonableness of the hours spent.

## 3. Apportionment Among Carriers

The laws regarding apportionment are materially different in California and North Carolina.[31] The court will address the choice of law on fuller briefing. That said, the insurers have agreed to pay defense costs attributable to direct-exposure cases.[32] There is no ripe dispute about allocation.[33]

## CONCLUSION

This resolves ECF No. 165.

---

[29] It contends that "National Foam has not attempted to establish that" its chosen counsel's rates are reasonable and necessary. *Id.* at 28. It is not National Foam's burden.

[30] Reply – ECF No. 173 at 14 (making this point).

[31] *See supra* Governing Law.

[32] Opp'n – ECF No. 171 at 8–9.

[33] Order – ECF No. 159 at 6–7.

ORDER – No. 23-cv-03873-LB                11

**IT IS SO ORDERED.**

Dated: March 30, 2026

LAUREL BEELER
United States Magistrate Judge